# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IMPLICIT LLC,

    Plaintiff,

v.

THE HOME DEPOT U.S.A., INC.,
HOME DEPOT PRODUCT
AUTHORITY, LLC,

    Defendants.

Civil Action No.
1:22-cv-02476-VMC

## OPINION AND ORDER

This patent infringement action is before the Court on the Motion to Dismiss

for Failure to State a Claim ("Motion," Doc. 21) filed by Defendants Home Depot

U.S.A., Inc. and Home Depot Product Authority, LLC ("Home Depot"). Home

Depot seeks an order determining that the patent-in–suit, *Method and System for*

*Attribute Management in a Namespace*, U.S. Patent No. 8,856,185 ("the '185 Patent,"

Doc. 20-1), or at least Claim 1 of the '185 Patent,[1] is directed to ineligible subject

matter under 35 U.S.C. § 101. Plaintiff Implicit, LLC ("Implicit"), the assignee of

---

[1] The Parties dispute whether Claim 1 is representative of all claims of the '185
patent, but the Amended Complaint (Doc. 20) only alleges that Home Depot
infringed Claim 1. Therefore a determination of Claim 1's validity would finally
resolve this case.

the '185 Patent, filed a Response in Opposition to the Motion ("Response," Doc.

29). Home Depot filed a Reply in Support of the Motion ("Reply," Doc. 30).

Based on the foregoing briefs and all matters properly of record, the Court

grants the Motion.

### Background

Claim 1 of the '185 Patent is set forth below:[2]

> A method, comprising:
>
> storing, at a computer system, information that implements a namespace having a plurality of objects, wherein the stored information includes data for various ones of the plurality of objects that is indicative of attribute values for one or more of a plurality of object attributes;
>
> receiving, by the computer system, an object associated with a user-defined attribute value;
>
> adding, by the computer system, the object associated with the user-defined attribute value to the namespace;
>
> receiving, by the computer system, first and second queries of the namespace that respectively indicate one or more attribute values and organization of query results, wherein the first query indicates relative levels of object attributes within a first

---

[2] As the '185 Patent is attached to and central to the Amended Complaint, the Court may consider the Patent, including the claims and specification, in ruling on the Motion. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) ("[T]his court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for "extraneous fact finding outside the record.") (citation omitted).

> > hierarchy of object attributes and wherein the second query indicates relative levels of object attributes within a second hierarchy of object attributes;
> >
> > generating, by the computer system in response to the first and second queries, respective first and second sets of access data usable to access objects in the namespace that have one or more attribute values that match the one or more attribute values specified by the respective first and second queries; and
> >
> > transmitting, by the computer system, the first and second sets of access data to one or more second computer systems associated with the first and second queries;
> >
> > wherein the first and second sets of access data are organized using the respective first and second hierarchies, and wherein the second hierarchy includes a given attribute at a level that is different from a level of the given attribute in the first hierarchy.

(Doc. 20-1 at 8:33–64[3]).

Implicit contends that the '185 Patent resulted from the pioneering efforts of Mr. Edward Balassanian (the "Inventor") in the area of computer systems and methods to manage access to information using object attributes which resulted in the development of a novel method and system for attribute management in a namespace in 2002. (Doc. 20 ¶ 9–10). According to the specification of the '185 Patent, a "namespace" is

---

[3] Record citations are to internal pagination, column, and paragraph numbering unless otherwise noted.

a collection of names that each uniquely identifies an object. For example, the pathnames of a conventional file system uniquely identify the files of the file system and are thus a namespace for the file system. Namespaces, however, can contain the names of a wide variety of objects including files, computer input and output devices, users, and so on. A namespace service typically provides various functions through which applications and users can access the information of the namespace. For example, a namespace may provide a function to retrieve a reference to an object having a specified name. When the function is invoked, it accesses various data structures to locate the object and return its reference.

(Doc. 20-1 at 1:43–55).

At the time of the Inventor's efforts, the most widely implemented technology used to access various data structures to locate the object and return its reference relied on namespaces utilizing predefined attributes associated with their objects and logical views of objects that corresponded to the physical organization of the namespace. (Doc. 20 ¶ 10). For example, an object representing a video may have the predefined attributes of format type and length. (Doc. 20-1 at 2:49–50). In addition, namespaces typically provide a logical view of their objects that corresponds to the physical organization of the namespace. (*Id.* at 1:59–62). For example, if the namespace is hierarchically organized, then the only view of that namespace reflects that same hierarchical organization. (*Id.* at 1:62–64).

The Inventor conceived of the inventions claimed in the '185 Patent as a way to improve upon these shortcomings and allow for more flexible handling of object

4

attributes and more flexible views into the namespace. (Doc. 20 ¶ 10). Because of

the aforementioned advantages that can be achieved through the use of the

patented invention, the '185 Patent presents significant commercial value for

companies like Home Depot. (*Id.* ¶ 12). The patented invention disclosed in the

'185 Patent resolves technical problems related to managing access to data

structures to locate the object, particularly problems related to flexibility in the

handling of object attributes and views into the namespace. (*Id.* ¶ 13).

## Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true,

and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

In determining whether this action should be dismissed for failure to state a claim,

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to

relief." Although detailed factual allegations are not necessarily required, the

pleading must contain more than "'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Importantly, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**Discussion**

**I.      The Court can consider eligibility at the pleading stage.**

Patent eligibility under 35 U.S.C. § 101 is a question of law. *Genetic Techs.*

*Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). As such, a district court may

determine patent eligibility "at the Rule 12(b)(6) phase 'when there are no factual

allegations that, taken as true, prevent resolving the eligibility question as a matter

of law.'" *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1384 (Fed.

Cir. 2018) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121,

1125 (Fed. Cir. 2018)). That is, "plausible factual allegations may preclude

dismissing a case under § 101 where, for example, 'nothing on th[e] record . . .

refutes those allegations as a matter of law or justifies dismissal under Rule

12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)

(alterations in original) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T*

*Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)).

The Federal Circuit has held that patentees who adequately allege their

claims contain inventive concepts survive a section 101 eligibility analysis under

Rule 12(b)(6). *Aatrix Software*, 882 F.3d at 1126–27. However, the Court is "not

bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555 (citation omitted). The Court is thus not required to accept

as true conclusory allegations of eligibility. Specifically, paragraphs 14–17 of the

6

Amended Complaint contain conclusory allegations of eligibility which the Court need not consider true.[4]

Likewise, "[the absence of] claim construction . . . [and] the statutory presumption of validity that exists once a patent issued . . . do not preclude dismissal of this case at the pleadings stage, nor do they preclude a finding of ineligibility." *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 778 (2022). Moreover, Plaintiff does not identify any specific claim construction issues which require resolution at the pleadings stage. The Court concludes that this case is ripe for resolution on the Motion.

---

[4] (*See* Doc. 20 ¶¶ 14 ("The claims of the '185 patent do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '185 patent recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to manage attributes for and views of objects within a namespace wherein multiple queries may be used to access a data structure in a computer system at various levels of hierarchy."), 15 ("The claims of the '185 patent recite inventive concepts that are not merely routine or conventional use of the aforementioned computer systems, but provide a new and novel solution to specific problems related to improving data management and access therein."), 16 ("And finally, the patented invention disclosed in the '185 patent does not preempt all the ways that computer systems may be organized to improve data access, nor does the '185 patent preempt any other well-known or prior art technology."), 17 ("Accordingly, the claims in the '185 patent recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.").

## II.     The Court need not conduct a representative claim analysis.

Implicit only alleges that Home Depot infringes Claim 1 of the '185 Patent.

Claims 2–7 are dependent claims of Claim 1. However, the '185 Patent sets forth

two other independent claims: Claims 8 and 14. While the Court's ruling, as a

practical matter, may provide a roadmap to determining the validity of those other

claims, the Court can see no reason why it would need to determine whether

Claim 1 is representative of any other claim where Implicit does not allege that

Home Depot infringes those claims or any claims dependent upon them. Because

a determination that Claim 1 is invalid will fully resolve the controversy, the Court

declines to conduct a representative claim analysis.

## III.    Claim 1 is invalid under Section 101.

Under section 101, "any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof" may be

eligible for patent protection. Any analysis under section 101 "begins by

identifying whether an invention fits within one of the four statutorily provided

categories or patent-eligible subject matter: processes, machines, manufactures,

and compositions of matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14

(Fed. Cir. 2014). The United States Supreme Court has recognized an "important

implicit exception" to this definition of patentable subject matter, however. *Mayo*

*Collaborative Servs. v. Prometheus Lab'ys*, Inc., 566 U.S. 66, 70 (2012). Specifically,

excepted from section 101's reach are "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). This case concerns the final category of "abstract ideas."

As a threshold matter, "an invention is not rendered ineligible for [a] patent simply because it involves an abstract concept." *Alice,* 573 U.S. at 217. The Supreme Court has provided a two-step test for determining whether a patent concerns an abstract idea. First is the determination of "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If the claims focus on a patent-ineligible concept, then the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 79). This second step entails "a search for an inventive concept—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original) (quoting *Mayo*, 556 U.S. at 73). An "inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (quoting *Mayo*, 556 U.S. at 79).

## A.    Step One of the *Alice* Analysis

Step one of the *Alice* inquiry asks "what the patent asserts to be the focus of

the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278,

1292 (Fed. Cir. 2020) (punctuation omitted) (quoting *Solutran, Inc. v. Elavon, Inc.*,

931 F.3d 1161, 1168 (Fed. Cir. 2019)). The Court must focus on the language of the

claims at issue and consider that language in light of the patent's specification. *Id.*

The Federal Circuit Court of Appeals has "consistently held that . . . claims

reciting the collection, transfer, and publishing of data are directed to an abstract

idea." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019). That

court has:

> explained that the "realm of abstract ideas" includes
> "collecting information, including when limited to
> particular content." *Elec. Power Grp., LLC v. Alstom S.A.*,
> 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting cases). We
> have also "treated analyzing information by steps people
> go through in their minds, or by mathematical
> algorithms, without more, as essentially mental
> processes within the abstract-idea category." *Id.* And we
> have found that "merely presenting the results of
> abstract processes of collecting and analyzing
> information, without more (such as identifying a
> particular tool for presentation), is abstract as an
> ancillary part of such collection and analysis." *Id.* Here,
> the claims are directed to a combination of these abstract-
> idea categories. Specifically, the claims here are directed
> to collecting and analyzing information to detect misuse
> and notifying a user when misuse is detected. *See id.*

*FairWarning*, 839 F.3d at 1093–94.

The Court turns to Claim 1 of the '185 Patent. As noted above, the invention claimed improvements over the prior art, which it referred to as "technology used to access various data structures to locate the object and return its reference [which] relied on namespaces utilizing predefined attributes associated with their objects and logical views of objects that corresponded to the physical organization of the namespace." (Doc. 20 ¶ 10). The perceived drawbacks to the prior art were (1) that objects would have predefined attributes that namespace developers could not alter, and (2) that "namespaces typically provide a logical view of their objects that corresponds to the physical organization of the namespace" such as a hierarchical organization. (*Id.* at 1:59–64). The Inventor conceived of the inventions claimed in the '185 Patent as a way to improve upon these shortcomings and allow for more flexible handling of object attributes and more flexible views into the namespace. (Doc. 20 ¶ 10).

Home Depot argues that these alleged improvements are analogous to those rejected in *Intellectual Ventures I LLC v. Erie Indemnity Company*, 850 F.3d 1315, 1327 (Fed. Cir. 2017). In that case, the Federal Circuit "agree[d] with the district court that the invention [in question was] drawn to the abstract idea of "creating an index and using that index to search for and retrieve data." *Id.* Similar to how the '185 Patent uses user-defined object attributes to respond to queries and generate sets of access data based on objects that have the attribute values in the namespace,

the invention in that case "locat[ed] information in a database, and . . . us[ed] an

index that includes tags and metafiles to locate the desired information." *Id*. As the

Federal Circuit explained,

> This type of activity, i.e., organizing and accessing
> records through the creation of an index-searchable
> database, includes longstanding conduct that existed
> well before the advent of computers and the Internet. For
> example, a hardcopy-based classification system (such as
> library-indexing system) employs a similar concept as
> the one recited by the '434 patent. There, classifiers
> organize and cross-reference information and resources
> (such as books, magazines, or the like) by certain
> identifiable tags, e.g., title, author, subject. Here, tags are
> similarly used to identify, organize, and locate the
> desired resource.

*Id.* (noting that the court has "previously held other patent claims ineligible for

reciting similar abstract concepts that merely collect, classify, or otherwise filter

data" and citing *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)

(concept of classifying data (an image) and storing it based on its classification is

abstract under step one); *Content Extraction & Transmission LLC v. Wells Fargo Bank,

Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (concept of data collection,

recognition, and storage abstract); *BASCOM*, 827 F.3d at 1348–49 ("content

filtering system for filtering content retrieved from an Internet computer network"

was directed to an abstract idea)).

Implicit resists this conclusion, arguing that the '185 Patent does not utilize

an index and noting that "[c]onventional library indexing systems do not allow

users to define attributes nor can they present data in multiple hierarchies of

organization, each at different levels," but instead "transmits data results for a

query in one single hierarchy at a time (e.g., alphabetically by title OR author, not

both simultaneously)." (Doc. 29 at 11).[5] The Court agrees that the '185 Patent does

not purport to claim the concept of an index, but the Court cannot meaningfully

distinguish the user-defined attributes from the tags at issue in *Erie Indemnity*, 850

F.3d at 1327.

Finally, Implicit argues that Home Depot describes Claim 1 at too high a

level of generality, in contrast to the warnings of the Federal Circuit and Supreme

Court that "describing the claims at such a high level of abstraction and untethered

from the language of the claims all but ensures that the exceptions to § 101 swallow

the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (citing

*Alice,* 573 U.S. at 217). However, Implicit does itself no favors in its own description

of the claims by repeatedly copy-pasting from the patent specification:

> Claim 1 of the '185 patent recites a method that improves
> upon shortcomings of the prior art and allows for more
> flexible handling of object attributes and more flexible
> views into the namespace. It provides a namespace
> having a plurality of objects with data indicative of
> attribute values for one or more of a plurality of object
> attributes, wherein at least one attribute value is user
> defined, and wherein multiple queries are used to access

---

[5] The Court notes in passing that most modern library websites allow for searches
based on multiple attributes and for refining search results by additional criteria
such as availability at branch locations, etc.

> a data structure in a computer system at various levels of various hierarchies.

(Doc. 29 at 8). This jargon cribbed from the patent is unhelpful. The Court is capable of reading the patent; the purpose of a brief is to explain the facts and law in a useful way. The Court does not mean to imply that Implicit is intentionally trying to obfuscate the invention's functionality by avoiding describing it in plain English in order to head off a finding that the claims are directed to an abstract idea, but it certainly does not help.

The Court thus finds that Claim 1 of the '185 Patent is directed to an abstract idea and therefore moves to the next step of the *Alice* analysis.

**B.      Step Two of the *Alice* Analysis**

Having determined that Claim 1 is directed to an abstract idea, the Court next "must examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72, 79). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* (quoting *Mayo*, 556 U.S. at 77). This "transformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 556 U.S. at 72).

14

The Supreme Court has "described step two of this analysis as a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (citing *Mayo*, 566 U.S. at 72-73).

In response to this inquiry, Implicit essentially argues that conventional methods of using a namespace to store attributes relied on predefined attributes associated with their objects or organized into a hierarchy, while the '185 Patent allows for a plurality of user-defined attributes in no particular hierarchy. (Doc. 29 at 19–20). Implicit points to the Federal Circuit's decision in *BASCOM*, 827 F.3d at 1350, where that court recognized that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." But in that case, "the inventive concept rest[ed] on taking advantage of the ability of at least some [internet service providers ("ISP")] to identify individual accounts that communicate with the ISP server, and to associate a request for Internet content with a specific individual account," and "harnesse[d] this technical feature of network technology in a filtering system by associating individual accounts with their own filtering scheme and elements while locating the filtering system on an ISP server." *Id.* at 1350. Stated another way, the patent in that case took advantage of an existing technological feature and used it in a different and

inventive way from its original purpose. Here, the '185 Patent contains no limitation requiring the use of any particular technology. (Doc. 20-1 at 3:2–4) ("The query specification may use any conventional querying language, such as an SQL-type language."). And, Implicit points to nothing particular about namespaces that makes storing object attributes inventive, as it concedes that prior art already used namespaces to store attributes. (*See id.* at 2:43–50).

Moreover, to the extent that Implicit argues that the ability of "the attributes of various objects, including directory objects and data objects, to be dynamically defined after creation of an object" (*id.* at 2:47–49) constitutes a non-conventional and non-generic arrangement of known and conventional pieces, Home Depot correctly points out that this concept of dynamically adding attributes does not clearly appear in Claim 1 but instead only in the specification. (Doc. 30 at 8). *Cf. Erie Indem.*, 850 F.3d at 1331 ("Nowhere do the claims recite elements or components that describe how the invention overcomes these compatibility issues. Although the patent itself describes in general terms the ability to access user-specific resource and information from any computer . . . neither the specification nor the claims cabin the invention specifically in terms of solving these compatibility issues."). "In short, the ['185] patent identifies a need, but the claims fail to provide a concrete solution to address that need." *Id.* at 1332. Therefore, the Court finds that Claim 1 is patent ineligible under 35 U.S.C. § 101.

## Conclusion

For the above reasons, it is

**ORDERED** that Home Depot's Motion to Dismiss for Failure to State a Claim (Doc. 21) is **GRANTED**, the Court holds that Claim 1 of U.S. Patent No. 8,856,185 is patent ineligible under 35 U.S.C. § 101, and this civil action is **DISMISSED WITH PREJUDICE**. The Clerk is directed to close the case.

**SO ORDERED** this 6th day of June, 2023.

_____

Victoria Marie Calvert
United States District Judge